# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| NEW WORLD PASTA COMPANY | Case No. 04-02817 (MDF) |
| PASTA ACQUISITION CORP. | Jointly Administered |
| THE PRINCE COMPANY, INC. | |
| RONZONI FOODS INTERNATIONAL CORPORATION | |
| NWP DELAWARE, LLC. | |
| Debtors. | |



**AMENDED FINAL ORDER (I) AUTHORIZING (A) SECURED POSTPETITION
FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C.
§ 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363
AND (C) GRANT OF ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 363 AND 364, AND
(II) RESTATING PARAGRAPHS 9, 13, 16, 17, 18, 24 AND 25 OF
THE ORIGINAL FINAL ORDER AS REFLECTED HEREIN**

Upon the motion (the "Motion") dated May 10, 2004 of New World Pasta

Company ("New World"), and Pasta Acquisition Corp., The Prince Company, Inc., Ronzoni

Foods International Corporation, and NWP Delaware, LLC (collectively, the "Affiliated

Debtors"), the above-captioned debtors and debtors-in-possession (New World and the Affiliate

Debtors collectively, the "Debtors"), for entry of an order (a) seeking this Court's authorization

pursuant to section 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as

amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtors, inter alia, (i) to obtain

postpetition financing up to an aggregate amount of $45,000,000 (the "Postpetition Financing")

by entering into that certain Senior Secured, Super-Priority Debtor in Possession Credit Agreement, dated as of May 10, 2004 (as the same has been or may be amended, supplemented or otherwise modified herein or from time to time or on the record, the "Postpetition Credit Agreement"),[1] a copy of which is annexed hereto as Exhibit A, by and among New World, as borrower, the Affiliated Debtors, as guarantors, the lenders and letter of credit issuers from time to time parties thereto (collectively, the "Postpetition Lenders"), and Black Diamond Commercial Finance, LLC, as Administrative Agent for the Postpetition Lenders (in such capacity, the "Postpetition Agent"), subject to the terms and conditions set forth therein, (ii) to grant to the Postpetition Agent and Postpetition Lenders, pursuant to section 364(c) of the Bankruptcy Code, security interests in and liens upon all of the Debtors' currently owned and after acquired property to secure the Debtors' Obligations under the Postpetition Credit Agreement, as well as security interests and liens senior and superior to the security interests and liens securing the Prepetition Senior Indebtedness and Prepetition Junior Indebtedness (as defined below in paragraph D of this Order) pursuant to section 364(d) of the Bankruptcy Code; and (iii) to grant to the Postpetition Agent and Postpetition Lenders super-priority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, with priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code; (b) seeking this Court's authorization to use the Cash Collateral (as defined below in paragraph I of this Order) pursuant to section 363(c) of the Bankruptcy Code and to provide adequate protection, pursuant to sections 361, 363(e) and

---

[1]       Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Postpetition Credit Agreement or Prepetition Loan Documents (as defined below), as applicable.

Case 1:04-bk-02817-MDF    Doc 1104    Filed 06/03/05    Entered 06/03/05 15:43:38    Desc
Main Document    Page 2 of 54

364(c) of the Bankruptcy Code, to the Prepetition Senior Lenders; (c) seeking a preliminary

hearing (the "Preliminary Hearing") on the Motion to consider entry of an interim order pursuant

to Bankruptcy Rule 4001 (the "Interim Order"); and (d) requesting that a final hearing (the

"Final Hearing") be scheduled by this Court to consider entry of a final order (this "Order")

authorizing on a final basis, inter alia, the Postpetition Financing, use of Cash Collateral and

provision of adequate protection; and due and sufficient notice of the Motion under the

circumstances having been given; and the Preliminary Hearing on the Motion having been held

before this Court on May 10, 2004, at which time the Court approved the entry of the Interim

Order; and the Final Hearing on the Motion having been held before this Court; and upon the

entire record made at the Preliminary Hearing and Final Hearing; and paragraphs 9, 13, 16, 17,

18, 24 and 25 of the original Order authorizing on a final basis, inter alia, the Postpetition

Financing, use of Cash Collateral and provision of adequate protection having been amended and

restated pursuant to that certain order of the Court dated as of [_____], 2005 (Docket

No. __) approving settlement of certain disputes, approving fourth amendment to the DIP Credit

Agreement, and amending certain provisions of the Final DIP Order, and this Court having found

good and sufficient cause appearing therefor;

**THE DEBTORS AND AGENTS HAVE STIPULATED TO THE FOLLOWING FOR ALL PURPOSES IN THESE CHAPTER 11 CASES. THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW WHICH ARE EXPRESSLY SUBJECT TO THE PRESERVATION OF RIGHTS IN FAVOR OF THIRD PARTIES SET FORTH IN PARAGRAPH 26:**

THE COURT HEREBY FINDS THAT:

A.      Commencement of Cases; Appointment of Creditors' Committee. On May 10,

2004 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under

chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are continuing in

possession of their property, and operating and managing their businesses, as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. The official committee of unsecured creditors (the "Creditors' Committee") was appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on May 24, 2004.

      B.    Jurisdiction; Venue. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure. Venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    Prepetition Loan Documents. Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors admit that pursuant to that certain Credit Agreement dated as of January 28, 1999 (as heretofore amended, supplemented or otherwise modified, the "Prepetition Credit Agreement"), among New World, as borrower, the various financial institutions party thereto, as lenders (the "Prepetition Lenders"), and BNY Asset Solutions LLC, as successor to The Bank of Nova Scotia, as administrative agent for the Prepetition Senior Lenders (as defined herein ) and Prepetition Junior Lenders (as defined herein), as senior collateral agent for the Prepetition Senior Liens and as collateral agent for the Prepetition Junior Liens (in such capacities, the "Prepetition Agent"), and all agreements, documents, notes, mortgages, pledges, guarantees, subordination agreements, instruments and any other agreements delivered pursuant thereto or in connection therewith (collectively, the "Prepetition Loan Documents"), certain lender parties to the Credit Agreement

114303.1 New World Pasta - Amended/Final DIP Order

(the "Prepetition Senior Lenders") made certain senior loans, advances and other financial accommodations, and provided for the issuance of letters of credit, to the Debtors to, among other things, fund the operations of the Debtors (collectively, the "Prepetition Senior Indebtedness"), while certain other lender parties to the Prepetition Credit Agreement, including without limitation The Bank of Nova Scotia, as selling lender, (the "Prepetition Junior Lenders") made certain junior loans, advances and other financial accommodations to the Debtors to, among other things, fund the operations of the Debtors (collectively, the "Prepetition Junior Indebtedness"). For purposes of this Order, the term "Prepetition Senior Indebtedness" shall mean all amounts owing under the Prepetition Loan Documents (including, without limitation, all Obligations as defined in the Prepetition Credit Agreement) to the Prepetition Senior Lenders, and shall include the principal of, interest on, fees and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents) owing to the Prepetition Senior Lenders, and any obligations, contingent or otherwise, in respect of the letters of credit, owing to the Prepetition Senior Lenders. For purposes of this Order, the term "Prepetition Junior Indebtedness" shall mean all amounts owing under the Prepetition Loan Documents to the Prepetition Junior Lenders.

D.      Prepetition Indebtedness.

        a.              Prepetition Senior Indebtedness. Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors admit that, as of the Petition Date, the aggregate principal amount of all indebtedness owed by Debtors to the Prepetition Agent and Prepetition Senior Lenders pursuant to the Prepetition Credit Agreement with respect to the Revolving Loans, Term-A Loans and Term-B

114303.1 New World Pasta - Amended/Final DIP Order

Loans is not less than $140,896,000 (which includes not less than $2,728,886 of letters of credit that were issued and outstanding), plus accrued interest, fees, costs, and expenses incurred in connection therewith as provided under the Prepetition Credit Agreement.

        b.        <u>Prepetition Junior Indebtedness</u>. The Prepetition Junior Lenders assert that, as of the Petition Date, the aggregate principal amount of all indebtedness owed by Debtors to the Prepetition Agent and Prepetition Junior Lenders pursuant to the Prepetition Credit Agreement with respect to the Term-C Loans, Term-D Loans and Term-E Loans is approximately $152,398,000, plus accrued interest, fees, costs and expenses incurred in connection therewith as provided under the Prepetition Credit Agreement.

        c.        <u>Subordination of Prepetition Junior Indebtedness</u>. Pursuant to the Prepetition Loan Documents, the Prepetition Senior Indebtedness is senior and superior to the Prepetition Junior Indebtedness.

        E.        <u>Prepetition Guarantees</u>

        (a)        <u>Prepetition Senior Lenders</u>. Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors admit that pursuant to those certain Guaranties (the "<u>Guarantees</u>") executed by the Affiliated Debtors, or their predecessors, and Ronzoni Foods Canada Corporation ("<u>Ronzoni</u>"), a non-debtor, foreign subsidiary of New World, as guarantors (collectively, the "<u>Guarantors</u>") in favor of the Prepetition Agent and Prepetition Senior Lenders, the Guarantors have unconditionally guaranteed all the Prepetition Senior Indebtedness owed by New World to the Prepetition Agent and Prepetition Senior Lenders. Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors acknowledge and

6

confirm that each of the Guarantees continue in full force and effect notwithstanding any use of Cash Collateral permitted under the Interim Order or this Order or any financing and financial accommodations extended by the Postpetition Agent or Postpetition Lenders to the Debtors pursuant to the terms of the Interim Order, this Order or Postpetition Loan Documents.

(b)     Prepetition Junior Lenders.  The Prepetition Junior Lenders assert that pursuant to the Guaranties, the Guarantors have unconditionally guaranteed all the Prepetition Junior Indebtedness owed by New World to the Prepetition Agent and Prepetition Junior Lenders.

F.     Prepetition Liens.

(a)     Prepetition Senior Liens.  Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors admit that to secure the Prepetition Senior Indebtedness and in furtherance of the Prepetition Credit Agreement, the Debtors executed for the Prepetition Agent and Prepetition Senior Lenders certain security agreements, pledge agreements, mortgages and other agreements pursuant to which the Debtors have granted security interests and senior liens (collectively, the "Prepetition Senior Liens"), in and upon substantially all of their assets, whether real or personal, tangible or intangible and wherever located, and all the proceeds, products, offspring, rents and profits thereof (all of the foregoing collateral generally described above shall be referred to herein collectively as the "Prepetition Collateral").

(b)     Prepetition Junior Liens.  The Prepetition Junior Lenders assert that to secure the Prepetition Junior Indebtedness and in furtherance of the Prepetition Credit Agreement, the Debtors executed for the Prepetition Agent and Prepetition Junior Lenders

114303.1  New World Pasta - Amended/Final DIP Order

certain security agreements, pledge agreements, mortgages and other agreements pursuant to which the Debtors have granted security interests and junior liens (collectively, the "Prepetition Junior Liens"), in and upon the Prepetition Collateral.

   (c) Subordination of Prepetition Junior Liens. Pursuant to the Prepetition Loan Documents, the Prepetition Senior Liens are senior and superior to the Prepetition Junior Liens, if any and if such Prepetition Junior Liens are valid, binding, enforceable and properly perfected.

   G. Prepetition Subordination and Participation Agreements. Pursuant to those certain subordination and participation agreements by and between The Bank of Nova Scotia, as administrative agent and selling lender, and JLL Pasta, LLC and JLL Pasta III, LLC (collectively, "JLL"), as participants (the "Prepetition Participation Agreements"),[2] The Bank of Nova Scotia sold a 100% participation in the Prepetition Junior Indebtedness to JLL. Pursuant to the Prepetition Participation Agreements, the Prepetition Senior Indebtedness and Prepetition Senior Liens are senior and superior to JLL's participation in the Prepetition Junior Indebtedness and Prepetition Junior Liens.

   H. Validity of Prepetition Senior Indebtedness and Prepetition Senior Liens. Without prejudice to the rights of any other party, but subject to the time limitations specified in

---

 [2] The Prepetition Participation Agreements are the following: (1) with respect to the Term-C Loans, that certain Subordination and Participation Agreement, dated as of July 30, 2001 (as amended), by and between The Bank of Nova Scotia, as administrative agent and selling lender, and JLL Pasta, LLC, as participant; (2) with respect to the Term-D Loans, that certain Subordination and Participation Agreement, dated as of August 14, 2002 (as amended), by and between The Bank of Nova Scotia, as administrative agent and selling lender, and JLL Pasta, LLC, as participant; and (3) with respect to the Term-E Loans, that certain Subordination and Participation Agreement, dated as of December 2, 2002 (as amended), by and between The Bank of Nova Scotia, as administrative agent and selling lender, and JLL Pasta III, LLC, as participant.

paragraph 26 of this Order, the Debtors acknowledge and agree that the Prepetition Senior Liens

(i) constitute valid, binding, enforceable and perfected first priority liens, subject only to the

Liens described in section 7.2.3 of the Prepetition Credit Agreement, and (ii) are not subject to

avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy

Code or applicable non-bankruptcy law. Without prejudice to the rights of any other party, but

subject to the time limitations specified in paragraph 26 of this Order, the Debtors further

acknowledge and agree that (i) the Prepetition Senior Indebtedness constitutes the legal, valid

and binding obligations of the Debtors, enforceable in accordance with their terms, (ii) no

objection, offsets, defenses or counterclaims of any kind or nature to the Prepetition Senior

Indebtedness exist, and (iii) the Prepetition Senior Indebtedness, and any amounts previously

paid to the Prepetition Agent or Prepetition Senior Lenders on account of the Prepetition Senior

Indebtedness, is not subject to avoidance, reduction, disallowance, impairment or subordination

pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Without prejudice to the

rights of any other party, but subject to the time limitations specified in paragraph 26 of this

Order, the Debtors further acknowledge and agree that the Prepetition Agent and Prepetition

Senior Lenders are entitled to be paid postpetition interest on the Prepetition Senior

Indebtedness, as well as reasonable attorneys', accountants', financial advisors' and other fees,

costs and charges related to the Prepetition Senior Indebtedness, all as provided in the Prepetition

Loan Documents, as a condition to the Prepetition Senior Lenders' consent to the Debtors' use of

the Cash Collateral as set forth herein. Subject to the time limitations specified in paragraph 26

of this Order, none of the foregoing acknowledgments or agreements by the Debtors shall be

binding on any other party and shall not affect the rights of the Creditors' Committee or any

other committee, person or entity (other than the Debtors) with respect to their rights to assert,

9

pursue or otherwise allege any of the Claims and Defenses (as defined below in paragraph 24 of this Order) in accordance with and subject to the terms of this Order.

I.    Cash Collateral.  For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined by section 363 of the Bankruptcy Code, deposits subject to setoff, and cash arising from the collection, sale, lease or other disposition, use or conversion to cash of any property of the Debtors in which the Prepetition Agent, Prepetition Senior Lenders or Prepetition Junior Lenders have any lien or security interest, whether such liens or security interests (including, without limitation, any adequate protection liens or security interests) existed at the commencement of the Chapter 11 Cases or arise thereafter pursuant to the Interim Order, this Order, any other order of the Court, applicable law or otherwise.

J.    Exigent Circumstances.  The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of Cash Collateral and Postpetition Financing.  The ability of the Debtors to maintain business relationships with their vendors and suppliers so that they may be able to purchase new inventory and otherwise finance their operations is essential to the Debtors' continued viability and ability to successfully restructure their business operations.  In addition, the Debtors' need for continued financing under the Postpetition Credit Agreement is critical and immediate.  In the absence of the Postpetition Financing and use of the Cash Collateral, both on an interim and a final basis, the continued operation of the Debtors' businesses would not be possible and serious, immediate and irreparable harm to the Debtors and their estates would occur.  The preservation, maintenance and enhancement of the going concern value of the Debtors are of the utmost

114303.1 New World Pasta - Amended/Final DIP Order

significance and importance to a successful restructuring of the Debtors under Chapter 11 of the Bankruptcy Code.

      K.        Adequate Protection to the Prepetition Senior Lenders. The adequate protection provided to the Prepetition Agent and Prepetition Senior Lenders as described herein for any decline in the value of such parties' interest in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the use of the Cash Collateral and from the granting to the Postpetition Agent and Postpetition Lenders of senior, priming liens pursuant to the provisions of the Interim Order or this Order, is consistent with and authorized by the Bankruptcy Code.

      L.        Separate Adequate Protection to the Prepetition Junior Lenders. On May 10, 2004, the Court approved the entry of an interim order granting adequate protection to the Prepetition Junior Lenders for their interests, if any, in the Prepetition Collateral and Cash Collateral. The Prepetition Junior Lenders are seeking adequate protection for their interests, if any, in the Prepetition Collateral and Cash Collateral on a final basis by separate order (collectively with such interim order, the "Prepetition Junior Lenders Orders"). The Prepetition Junior Lenders are not seeking or requesting any adequate protection as part of the Interim Order or this Order.

      M.        Inability to Distinguish Between Collateral. It would be practically difficult and costly not only to trace and allocate the cash proceeds received by any Debtor to particular items of Postpetition Collateral (as defined below in paragraph 6 of this Order), but to determine the extent to which such proceeds are attributable to Prepetition Collateral as distinguished from Postpetition Collateral not constituting Prepetition Collateral.

114303.1 New World Pasta - Amended/Final DIP Order

N.     No Alternative Sources of Funding.  Given the Debtors' current financial condition and capital structure, the Debtors have attempted but are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code or pursuant to sections 364(a), (b) or (c)(1) of the Bankruptcy Code or secured credit pursuant to Sections 364(c)(2) and (3) only.  Financing on a postpetition basis is not otherwise available without the Debtors granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code.  Under the circumstances, no other source of financing exists on terms more favorable than those offered by the Postpetition Agent and Postpetition Lenders.

O.     Consent by Required Lenders.  The "Required Lenders" as defined under the Prepetition Credit Agreement have consented to the Debtors' entering into the financing arrangements contemplated by this Order and the Postpetition Loan Documents and to the Debtors' use of Cash Collateral in which the Prepetition Agent, the Prepetition Senior Lenders and Prepetition Junior Lenders have an interest, on the terms and conditions set forth in this Order, and have directed the Prepetition Agent to so consent.  Pursuant to the terms of the Prepetition Credit Agreement, including sections 7.2.2, 7.2.3 and 10.1 thereof, only the consent of the Required Lenders is required for the incurrence of the Postpetition Indebtedness and the granting of the Postpetition Liens.  The consent granted herein is expressly limited to the postpetition financing being provided by the Postpetition Agent and Postpetition Lenders as contemplated by this Order and the Postpetition Credit Agreement.

12

P.     Section 364(e); Good Faith.  Based on the record presented to this Court by the Debtors, it appears (and the Debtors, the Prepetition Agent and Postpetition Agent have stipulated) that the Postpetition Credit Agreement, amendment to the Postpetition Credit Agreement attached hereto as Exhibit B (the "Amendment"), Postpetition Financing, use of Cash Collateral and provision of adequate protection have been negotiated in good faith and at arm's-length among the Debtors, the Prepetition Agent and Postpetition Agent, and any credit extended and loans made to, Cash Collateral used by, and adequate protection provided by the Debtors pursuant to the Interim Order or this Order shall be deemed to have been extended, issued, made, used or provided, as the case may be, in good faith as required by, and within the meaning of, section 364(e) of the Bankruptcy Code.

Q.     Fair and Reasonable Terms.  Based on the record before this Court, it appears (and the Debtors, the Prepetition Agent and Postpetition Agent have stipulated) that the terms of the Interim Order and this Order, including, without limitation, the terms of the Postpetition Credit Agreement, Amendment, Postpetition Financing, use of Cash Collateral and provision of adequate protection, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

R.     Minimize Disputes and Litigation.  Pursuant to sections 363(c)(2), 363(e) and 364(d) of the Bankruptcy Code, the Debtors are required to provide adequate protection to the Prepetition Agent and the Prepetition Senior Lenders in respect of any decline in the value of the such parties' interest in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the use of Cash Collateral and from the granting to the Postpetition Agent of senior, priming liens on property in which the Prepetition Agent and the Prepetition

13

Senior Lenders have the Prepetition Senior Liens. The Debtors believe that the treatment provided by the Interim Order and this Order will minimize disputes and litigation over Prepetition Collateral values, the use of Cash Collateral, the provision of adequate protection and the need to segregate the Prepetition Collateral and the proceeds thereof including Cash Collateral.

S. Good Cause Shown. Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the Debtors' businesses and operations and permit them to meet payroll and other operating expenses, obtain needed supplies and retain customer, employee and supplier confidence by demonstrating an ability to maintain normal operations. The Postpetition Credit Agreement, Amendment, Postpetition Financing, use of Cash Collateral and provision of adequate protection authorized hereunder are critical to avoid immediate and irreparable harm to the Debtors' estates, and the Postpetition Credit Agreement, Amendment, Postpetition Financing, use of Cash Collateral and provision of adequate protection authorized in the Interim Order and/or this Order are in the best interests of the Debtors' estates.

T. Adequate Notice. On May 10, 2004, the Debtors filed the Motion with the Court and provided notice of the Preliminary Hearing and the relief requested in the Motion by facsimile or overnight delivery to the following parties: (i) the Office of the United States Trustee, (ii) the creditors holding the 20 largest unsecured claims against the Debtors on a consolidated basis; (iii) the Prepetition Agent and its counsel, (iv) counsel to the Prepetition Junior Lenders and JLL, (v) other known holders of prepetition liens against the Debtors' property or their counsel; (vi) the U.S. Attorney; (vii) the Internal Revenue Service; and (viii) counsel to the unofficial committee of unsecured creditors. Copies of the Interim Order and Postpetition Credit Agreement, and notice of the Final Hearing, were served on all such parties,

counsel to the Creditors' Committee, and all parties requesting notice pursuant to Bankruptcy Rule 2002, and were made available to all parties at the offices of the Debtors' counsel. A term sheet summarizing the principle terms of the Amendment were provided to, among others, the Office of the United States Trustee, counsel to the Creditors' Committee, counsel to the Prepetition Agent, and counsel to JLL on July 6, 2004. Copies of the Amendment were made available to all parties at the Final Hearing. Such notice constitutes sufficient notice under section 102 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014 and no other or further notice is required or need be given.

U.     Immediate Entry of Order. The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The permission granted herein on a final basis to use Cash Collateral, obtain the Postpetition Financing, enter into the Postpetition Credit Agreement and Amendment, and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful restructuring.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing and Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.     Motion Granted. The Motion is granted on a final basis, subject to the terms and conditions set forth in this Order.

15

2. <u>Authorization</u>. The Debtors are expressly authorized and empowered on a

final basis to:

> (a) borrow money, incur Postpetition Indebtedness (as defined below in this paragraph 2), use Cash Collateral, and perform their obligations pursuant to the provisions of the Interim Order, this Order and the Postpetition Credit Agreement, subject to the Debtors' providing adequate protection to the Prepetition Agent and the Prepetition Senior Lenders as set forth in paragraph 8 of this Order; and

> (b) execute and enter into the Postpetition Credit Agreement, as well as all such other financing statements, notices, schedules, other security agreements, deeds of trust, mortgages, instruments, guaranties, subordination agreements, acceptance agreements and documents as may be reasonably appropriate, necessary or required to (i) evidence their obligations to the Prepetition Agent or Postpetition Agent (collectively, the "<u>Agents</u>"), or Prepetition Senior Lenders or Postpetition Lenders (collectively, the "<u>Lenders</u>") arising under or in connection with the Interim Order, this Order or Postpetition Credit Agreement, (ii) consummate the terms and provisions of the Interim Order, this Order or Postpetition Credit Agreement, or (iii) evidence the Postpetition Financing or the perfection of the liens and security interests to be given to Agents or Lenders pursuant to the Interim Order, this Order or the Postpetition Credit Agreement (collectively, the "<u>Postpetition Loan Documents</u>").

Upon execution by the Debtors, the Postpetition Loan Documents, including

without limitation the Amendment, shall be incorporated as part of this Order and shall be

deemed binding on and enforceable against the Debtors, their estates, and their successors and

assigns. The Debtors are further authorized to execute and deliver any non-material amendments

or modifications to the Postpetition Credit Agreement or any of the Postpetition Loan

Documents as may be agreed upon in writing by the Debtors and the Postpetition Agent, without

the need of further notice, hearing or order of this Court. Any and all Postpetition Loan

Documents entered into by the Debtors prior to the date of this Order in accordance with the

terms of the Interim Order are hereby approved and ratified in full. For purposes of this Order,

the term "<u>Postpetition Indebtedness</u>" shall mean all amounts owing under the Postpetition Credit

Agreement and other Postpetition Loan Documents (including, without limitation, all

16

Obligations as defined in the Postpetition Credit Agreement) and shall include the principal of, interest on, fees and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the Postpetition Loan Documents), and any obligations, contingent or otherwise, in respect of the letters of credit.

        3.      Borrowing; Use of Cash Collateral. Subject to the terms and conditions of this Order and the Postpetition Loan Documents, including without limitation, the financial covenants as specified in the Postpetition Credit Agreement, and the provision of adequate protection as described in this Order, (a) Agents and Lenders hereby consent to the Debtors' limited use of Agents' and Lenders' Cash Collateral and (b) Postpetition Agent and Postpetition Lenders may make loans and advances, and issue, or cause to be issued, as and when provided under the Postpetition Credit Agreement, letters of credit, to the Debtors. Notwithstanding anything in this Order to the contrary, the Debtors may use the Cash Collateral and incur Postpetition Indebtedness solely in accordance with the financial covenants, formulae and other terms and conditions set forth in the Postpetition Credit Agreement and this Order. Notwithstanding the foregoing, if Postpetition Agent in its sole discretion advances funds or other extensions of credit in excess of any financial covenants, formulae, or other terms and conditions (or any other limitations in the Postpetition Loan Documents), such advances (and any other indebtedness in excess of such amount) shall constitute Postpetition Indebtedness entitled to the benefits of the Postpetition Loan Documents and this Order; provided that such advances shall not exceed $45,000,000. None of the Agents or Lenders shall have any obligation with respect to the Debtors' use of Cash Collateral or the proceeds of the Postpetition Financing, the Postpetition Collateral or Cash Collateral, and none of them shall be obligated to ensure or

114303.1 New World Pasta - Amended/Final DIP Order

monitor the Debtors' compliance with any such financial covenants, formulae, or other terms and conditions or be obligated to pay (directly or indirectly from the Prepetition Collateral or Postpetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Postpetition Loan Documents. The Agents' or Lenders' consent to any Budget shall not be construed as a consent to the use of any Cash Collateral or a commitment to continue to provide Postpetition Financing after the occurrence of an Event of Default (as defined in section 8.1 of the Postpetition Credit Agreement) or beyond the Termination Date (as defined below in paragraph 16 of this Order), regardless of whether the aggregate funds shown on the Budget have been expended.

4. Interest, Fees, Costs and Expenses for Postpetition Indebtedness. All Postpetition Indebtedness shall bear interest, including without limitation at the Default Rate upon the occurrence and continuation of an Event of Default, and be payable as set forth in the Postpetition Credit Agreement. The Debtors are hereby authorized and directed, without further motion, fee application, or order of this Court, to pay or reimburse Postpetition Agent for all present and future fees (including any and all amendment fees), commissions, costs and expenses, including all reasonable attorneys', accountants', and financial advisors' fees and expenses, paid or incurred by Postpetition Agent at any time in connection with the financing transactions as authorized by and provided for in the Interim Order, this Order, the Postpetition Credit Agreement, the Amendment, or the Postpetition Loan Documents, all of which unpaid fees, commissions, costs and expenses shall be and are included as part of the principal amount of the Obligations, shall be secured by the Postpetition Collateral and afforded all of the rights, priorities and protections afforded to Postpetition Agent in respect of the Postpetition Indebtedness under the Interim Order, this Order and the Postpetition Loan Documents. Any and

18

all fees, costs and expenses paid prior to the Petition Date by any Debtor to the Postpetition Agent or Postpetition Lenders in connection with or with respect to the Postpetition Financing, Postpetition Credit Agreement or Amendment are hereby approved in full on a final basis.

5.    Closing Date Payments. As part of the Interim Order, the Debtors were authorized and directed to pay on the Closing Date (taking into account all amounts paid prior to the Closing Date) and on a calendar monthly basis thereafter (i) all reasonable costs and expenses of the Postpetition Agent (including all reasonable fees and expenses of professionals (including, without limitation, a primary legal advisor, a "local" legal advisor and a financial advisor) engaged by the Postpetition Agent) relating to the negotiation, documentation and administration of the Postpetition Credit Agreement (whether or not the Postpetition Credit Agreement is put into place), and (ii) all accrued but unpaid interest at Alternate Base Rate plus 8% on the Prepetition Senior Indebtedness and all other fees, expenses, costs and charges (including all reasonable fees and expenses of professionals (including, without limitation, a primary legal advisor, a "local" legal advisor and a financial advisor) engaged by the Prepetition Agent) owing in respect thereof under the Prepetition Credit Agreement, regardless of whether any of the interest, fees, expenses, costs and charges described in this paragraph 5 accrued, arose or were incurred prior to, on or as of the Closing Date (other than with respect to interest accrued on the Prepetition Senior Indebtedness prior to the Petition Date). Such payments are hereby approved in full on a final basis, subject to paragraph 28 of this Order. The payment by Debtors of such interest, fees, expenses, costs and charges described in this paragraph 5 shall be a condition precedent to the Debtors' use of the Cash Collateral. The payment of interest accrued on the Prepetition Senior Indebtedness prior to the Petition Date is hereby approved in full and on a final basis, subject to paragraph 28 of this Order.

19

6. Security for Postpetition Agent and Postpetition Lenders.

a. Postpetition Liens. The Postpetition Agent and Postpetition Lenders are hereby granted as security for the repayment of all Postpetition Indebtedness, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, first priority and perfected security interests and liens (the "Postpetition Liens") in and upon all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature whatsoever, whether real or personal, tangible or intangible, wherever located, including, without limitation, all cash (including all Cash Collateral, wherever held), goods, accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, equipment, vehicles, 100% of the capital stock and other equity or ownership interests held by any Debtor, trademarks, trade names, licenses, causes of action, rights to payment including tax refund claims, insurance proceeds and tort claims (exclusive of actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 549, 550, 552(b) and 553 of the Bankruptcy Code (the "Avoidance Actions") and the proceeds and recoveries from the Avoidance Actions (the "Avoidance Action Proceeds")), and the proceeds, products, offspring, rents and profits of all of the foregoing, all as described more fully in the Postpetition Credit Agreement (all of the foregoing, the "Postpetition Collateral"), provided that the Postpetition Liens shall be subject only to: (1) the Carve-Out (as defined below in paragraph 19 of this Order and subject to paragraph 40), and (2) the Permitted Encumbrances as defined in the Postpetition Credit Agreement, other than the Prepetition Senior Liens and Prepetition Junior Liens which are being primed as described below, provided further that the Postpetition Liens shall be, pursuant to section 364(d)(1) of the Bankruptcy Code, senior and superior to the Prepetition Senior Liens and Prepetition Junior Liens. Other than the Carve-Out and Permitted Encumbrances, the Postpetition Liens shall at all times be senior to (i) the rights of the Debtors

20

and any successor trustee or estate representative in the Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, (ii) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (iii) any security interest or lien of any creditor or other party in interest in these Chapter 11 Cases, (iv) any security interest in or lien which is avoided or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code, and (v) any liens granted on or after the Petition Date to provide adequate protection to any party. The Postpetition Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination or avoidance for all purposes in the Chapter 11 Cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceedings if any of the Chapter 11 Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "Successor Case"). Other than the Carve-Out and Permitted Encumbrances, no other liens or security interests shall be senior or equal to or pari passu with the Postpetition Liens in these Chapter 11 Cases and the Successor Case without the express written consent of the Postpetition Agent and Postpetition Lenders (which consent may be withheld in their sole discretion). Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of the Permitted Encumbrances, subject to the time limitations and waivers provided in paragraph 26 of this Order with respect to the Prepetition Senior Liens.

                b.     Super-Priority Claims. In addition to the Postpetition Liens, for all Postpetition Indebtedness now existing or hereafter arising pursuant to Postpetition Credit Agreement, the Postpetition Loan Documents, the Interim Order, and/or this Order, the Postpetition Agent and Postpetition Lenders are hereby granted an allowed super-priority

114303.1 New World Pasta - Amended/Final DIP Order

administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "Super-Priority Claims"), and, except for the Carve-Out, the Super-Priority Claims shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases and any Successor Case), and shall at all times be senior to the rights of the Debtors or any domestic or foreign subsidiary or affiliate of any Debtor, any successor trustee or estate representative, or any other creditor or party in interest in the Chapter 11 Cases or any Successor Case. Except for the Carve-Out, no cost or expense of administration under any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases and any Successor Case), shall be senior to, equal to, or pari passu with, the Super-Priority Claims.

7.   Continuing Prepetition Lien.  The Prepetition Agent and Prepetition Senior Lenders shall have continuing valid, binding, enforceable and perfected liens in all Prepetition Collateral, including any proceeds, products, offspring or profits of the Prepetition Collateral generated after the Petition Date, under the same terms and conditions provided under the Prepetition Credit Agreement and the Prepetition Loan Documents, with the same validity and priority as existed on the Petition Date.

8.   Adequate Protection to Prepetition Agent and Prepetition Senior Lenders.

Until the indefeasible repayment in full in cash of the Prepetition Senior Indebtedness, as adequate protection for the priming of the Prepetition Senior Liens, any Cash

22

Collateral expended by the Debtors pursuant to the Interim Order or this Order and the use, consumption, sale or other disposition of other Prepetition Collateral and any proceeds thereof (the "Adequate Protection Senior Obligations"), the Prepetition Agent and Prepetition Senior Lenders consent to and are hereby granted the following:

a.     Replacement Liens. Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, continuing valid, binding, enforceable and perfected, liens and security interests in and to all of the Postpetition Collateral (the "Adequate Protection Senior Liens"). The Adequate Protection Senior Liens shall secure an amount of the Prepetition Senior Indebtedness equal to the aggregate decline in the value of the Prepetition Senior Lenders' interest in the Prepetition Collateral (in which the Prepetition Senior Lenders hold valid, perfected, enforceable and non-avoidable liens) occurring from and after the Petition Date, whether as a result of the imposition of the automatic stay, priming of the Prepetition Senior Liens or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, decline in market value of the Prepetition Collateral or otherwise, and shall at all times be senior to (i) the rights of the Debtors and any successor trustee or estate representative in the Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, (ii) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (iii) any security interest or lien of any creditor or other party in interest in these Chapter 11 Cases, and (iv) any security interest in or lien which is avoided or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code; provided, however, that the Adequate Protection Senior Liens shall be subordinate in priority only to the Postpetition Liens, Prepetition Senior Liens, Permitted Encumbrances, Carve-Out, and Replacement Liens as defined in and granted to Miller Milling Company pursuant to that certain

Case 1:04-bk-02817-MDF    Doc 1104    Filed 06/03/05    Entered 06/03/05 15:43:38    Desc
Main Document      Page 23 of 54

Stipulated Order Authorizing Use Of Miller Milling Company's Collateral And Granting The Replacement Lien As Adequate Protection (the "Miller Stipulation") in the event and solely to the extent that the asserted PMSI Lien (as defined in the Miller Stipulation) is determined to be valid and senior in priority to the Prepetition Senior Lenders. The Adequate Protection Senior Liens shall be deemed legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance for all purposes in the Chapter 11 Cases and any Successor Case.

                        b.      Adequate Protection Claim. As further adequate protection for the aggregate decline in value of the Prepetition Senior Lenders' interest in the Prepetition Collateral (in which the Prepetition Senior Lenders hold valid, perfected, enforceable and non-avoidable liens) from and after the Petition Date, whether as a result of the imposition of the automatic stay, priming of the Prepetition Senior Liens or physical deterioration, consumption, use, sale, lease, disposition, shrinkage, decline in market value or otherwise, the Prepetition Agent and Prepetition Senior Lenders shall have an allowed super-priority administrative claim under sections 364(c)(1), 503(b), 507(a)(1) and 507(b) of the Bankruptcy Code (the "Adequate Protection Senior Claim"). Except for the Carve-Out and Super-Priority Claim, the Adequate Protection Senior Claim shall have priority over all other costs and expenses of administration of the kinds specified and ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors or any domestic or foreign subsidiary or affiliate of any Debtor, any successor trustee or estate representative, or any other creditor or party in interest in the Chapter 11 Cases or any Successor Case. Except for the Carve-Out and Super-Priority Claim, no cost or expense of administration under any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326,

24

328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 of the Bankruptcy Code, or otherwise, shall be senior to, equal to, or pari passu with, the Adequate Protection Senior Claim. Notwithstanding anything in this Order to the contrary, the Adequate Protection Senior Claim shall be subordinate in priority to the super-priority administrative claim granted to Miller Milling Company pursuant to the Miller Stipulation in the event and solely to the extent that the asserted PMSI Lien (as defined in the Miller Stipulation) is determined to be valid and senior in priority to the Prepetition Senior Lenders.

        c.     Current Payment of Interest, Fees and Charges. The payment of interest monthly in arrears on the Prepetition Senior Indebtedness (to be shared ratably by the Prepetition Senior Lenders on the basis of their principal outstanding) at the Alternate Base Rate plus 8%, plus payment on a current basis of all other fees, costs and charges arising under or in connection therewith under the Prepetition Credit Agreement, including without limitation, the reasonable attorneys', accountants', financial advisors' and other fees and expenses of the Prepetition Agent and Prepetition Senior Lenders, all without further motion, fee application or order of the Court.

        9.     Subordination of Prepetition Junior Lenders. Notwithstanding anything in this Order to the contrary, any and all claims and liens of the Postpetition Agent, Postpetition Lenders, Prepetition Agent (provided that such claims and liens are for the benefit of the Prepetition Senior Lenders) and Prepetition Senior Lenders arising with respect to or in connection with this Order, the Prepetition Loan Documents or Postpetition Loan Documents (the "Superior Obligations"), including without limitation, the Postpetition Indebtedness, Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Obligations, Adequate Protection Senior Claims, Adequate Protection Senior Liens, Prepetition Senior Indebtedness and

25

Prepetition Senior Liens, must and shall be indefeasibly paid and satisfied in full in cash before any payment or distribution, whether pursuant to a plan of reorganization or otherwise, may or can be made to or retained by the Prepetition Junior Lenders or JLL arising with respect to or in connection with the Prepetition Loan Documents, the Prepetition Junior Lenders Orders, this Order or Postpetition Loan Documents, if applicable (the "Subordinate Obligations"); provided, however, that payment in full in cash of the Adequate Protection Senior Claims secured by the Adequate Protection Senior Liens and Prepetition Senior Indebtedness secured by the Prepetition Senior Liens may be waived by a vote of the Required Lenders (as defined in the Prepetition Loan Documents) with respect to the Prepetition Senior Indebtedness at or prior to confirmation of a plan of reorganization for the Debtors. Any payment or distribution, whether in cash, securities or other property, which would otherwise, but for the terms hereof, be payable or deliverable to the Prepetition Junior Lenders or JLL in respect of or in connection with the Subordinate Obligations shall be paid or delivered directly to the Postpetition Agent (to be held and/or applied by Postpetition Agent in accordance with the terms of this Order and the Postpetition Credit Agreement) until all Superior Obligations are indefeasibly paid and satisfied in full in cash (except as may be waived pursuant to the terms of this paragraph) and all commitments to lend under the Postpetition Credit Agreement shall have been terminated.

10. Perfection of New Liens. The liens and security interests on or in the Postpetition Collateral granted to the Agents or Lenders by the Interim Order, this Order or the Postpetition Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however,

26

that notwithstanding the provisions of section 362 of the Bankruptcy Code, which is hereby lifted and vacated: (i) Agents or Lenders may, at their sole option, file or record or cause the Debtors to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as Agents or Lenders may require, and (ii) Agents or Lenders may require the Debtors to deliver to Agents or Lenders any chattel paper, instruments or securities evidencing or constituting any Postpetition Collateral, and the Debtors are directed to cooperate and comply therewith. If Agents or Lenders, in their sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such postpetition security interests and liens, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents shall be deemed to have been filed or recorded in these Chapter 11 Cases as of the Petition Date, but with the priorities as set forth herein. Agents or Lenders may (in their sole discretion) but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of such applicable parties' interests in the Postpetition Collateral. Notwithstanding anything in this Order to the contrary, the Prepetition Agent, Prepetition Senior Lenders, Prepetition Junior Lenders and JLL shall not file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in the Interim Order, this Order, or the Prepetition Junior Lenders Orders, if applicable, unless the Postpetition Agent and Postpetition Lenders shall theretofore

27

have done so. Upon the request of the Postpetition Agent, the Prepetition Agent, Prepetition

Senior Lenders, Prepetition Junior Lenders and JLL are authorized to make, execute and deliver

such instruments to enable the Postpetition Agent to further perfect, preserve and enforce the

security interests and liens granted to the Postpetition Agent and Postpetition Lenders by the

Interim Order, this Order or the Postpetition Credit Agreement. To the extent that any applicable

non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or

perfection of the security interests and liens authorized or created hereby, or otherwise would

impose filing or registration requirements with respect thereto, such law is hereby pre-empted to

the maximum extent permitted by the United States Constitution, the Bankruptcy Code,

applicable federal law, and the judicial power of the United States Bankruptcy Court (provided

that Agents and Lenders may still take such steps as they wish to perfect their security interests

and liens under otherwise applicable state law without waiving the benefits of this provision of

the Interim Order or this Order).

11.     Financial Reports to Prepetition Agent. The Debtors shall deliver to the

Prepetition Agent, simultaneously with their delivery to the Postpetition Agent, all financial

reports and Budgets required under the Postpetition Credit Agreement. The Postpetition Agent

shall make such documents available to the Postpetition Lenders.

12.     Default Under Other Documents. The Agents and Lenders shall have all

rights and remedies with respect to the Debtors as are set forth in the Interim Order, this Order or

the Postpetition Credit Agreement, including without limitation the Postpetition Liens, Super-

Priority Claims, Prepetition Senior Liens, Adequate Protection Senior Obligations, Adequate

Protection Senior Liens, and Adequate Protection Senior Claims. Notwithstanding anything to

the contrary contained in any prepetition or postpetition agreement, contract, document, note or

28

instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise provided herein, any provision that restricts, limits or impairs in any way any Debtor from granting the Agents and Lenders postpetition security interests or liens upon any of its assets or properties or otherwise entering into and complying with all of the terms, conditions and provisions of the Interim Order, this Order or Postpetition Loan Documents shall be unenforceable against such Debtors(s), and therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the Agents and Lenders pursuant to the Interim Order, this Order or Postpetition Loan Documents.

13. Debtors' Waiver of Rights. Except as otherwise provided by paragraphs 18 and 25 of this Order, the Debtors and their estates (and any party in interest acting on behalf of any Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without Agents' and Lenders' prior written consent (which may be withheld in their sole discretion), or (b) without prior indefeasible payment and satisfaction in full in cash of the Postpetition Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens on or security interests in any Postpetition Collateral, which are pari passu with, equal to or superior to the Agents' or Lenders' liens on and security interests in such Postpetition Collateral granted under this Order; (ii) to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, claims or expenses against the Debtors, which are pari passu with, equal to or superior to the Agents' or Lenders' claims and expenses granted under this Order; (iii) to request that the Court authorize the use of Cash Collateral in which Agents or Lenders have an interest or the sale, lease, or other disposition of any property of Debtors' estates in which Agents or

29

Lenders have a lien or security interest, except as expressly permitted hereunder or under the Postpetition Credit Agreement; or (iv) to modify or affect any of the rights of Agents or Lenders under this Order or any Postpetition Loan Documents by any order entered in any of the Chapter 11 Cases or any Successor Case.

14.    Retainers.  Any unused retainers with professionals engaged pursuant to or in connection with the Prepetition Credit Agreement may be used by the Postpetition Agent and Postpetition Lenders as retainers for professionals engaged in connection with the Postpetition Credit Agreement, without further order of the Court.

15.    Waiver of Section 506(c) Claims.  No costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any person or entity shall be imposed against Postpetition Agent, Postpetition Lenders, Prepetition Agent or Prepetition Senior Lenders, their claims or the Prepetition Collateral or Postpetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby waive any and all such rights under section 506(c) of the Bankruptcy Code.

16.    Termination of Postpetition Financing.  Except as otherwise agreed in writing by the Postpetition Agent, the Debtors' authorization to incur Postpetition Indebtedness shall immediately and automatically terminate, and all Postpetition Indebtedness shall be immediately due and payable in cash, upon the earliest to occur of the following (the "Termination Date"), all without further notice, order or relief of the Court, and as described more fully in the Postpetition Credit Agreement:

      a.    March 31, 2006;

b.      the date of termination of Postpetition Lenders' obligations to make Advances and to incur Letter of Credit Obligations or permit existing Loans to remain outstanding pursuant to Section 8.2(b) of the Postpetition Credit Agreement;

c.      the date of indefeasible prepayment in full by Borrower of the Loans and the cancellation and return (or stand-by guarantee) of all Letters of Credit or the cash collateralization of all Letter of Credit Obligations pursuant to Section 1.2(c) of the Postpetition Credit Agreement, and the permanent reduction of all Commitments to zero dollars ($0),

d.      [intentionally omitted];

e.      sixty (60) days following the Petition Date if the Final Order has not been entered by the Bankruptcy Court by such date;

f.      [intentionally omitted];

g.      [intentionally omitted];

h.      the date of entry of an order of the Bankruptcy Court confirming a plan of reorganization in any Chapter 11 Case that has not been consented to by the Requisite Lenders and fails to provide for the payment in full in cash of all Obligations under the Postpetition Credit Agreement and the other Postpetition Loan Documents on the effective date of such plan; and

i.      if a plan of reorganization that has been consented to by Postpetition Agent and the Requisite Lenders or that provides for payment in full in cash of all Obligations under the Postpetition Credit Agreement and the other Postpetition Loan Documents has been confirmed by order of the Bankruptcy Court, the earlier of the effective date of such plan of reorganization or the ninetieth day after the date of entry of such confirmation order.

17.     Termination of Use of Cash Collateral. Except as otherwise agreed in

writing by the Prepetition Agent, the Debtors' authorization to consensually use the Cash

Collateral shall immediately and automatically terminate upon the earlier of the Termination

Date or one (1) Business Day after written notice to the Debtors of their failure to comply with

the adequate protection provisions specified in paragraph 8 hereof, unless the Debtors cure such

failure to comply within one (1) Business Day after written notice.

114303.1 New World Pasta - Amended/Final DIP Order

18.     Modification of Automatic Stay; Other Remedies.

a.      Except as otherwise provided in this paragraph 18, the automatic
stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to
Postpetition Agent, Postpetition Lenders, Prepetition Agent and Prepetition Senior Lenders to
permit them to perform in accordance with, and exercise, enjoy and enforce their rights, benefits,
privileges and remedies pursuant to, this Order and/or the other Postpetition Loan Documents
without further application or motion to, or order from, the Court, other than those remedies that
require the occurrence and continuance of an Event of Default and prior notice as described in
this paragraph 18. Regardless of any change in circumstances (whether or not foreseeable),
neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or
applicable law shall be utilized to prohibit Postpetition Agent, Postpetition Lenders, Prepetition
Agent or Prepetition Senior Lenders' exercise, enjoyment and enforcement of any of such rights,
benefits, privileges and remedies as described herein. Postpetition Agent, Postpetition Lenders,
Prepetition Agent and Prepetition Senior Lenders are hereby authorized and granted leave,
among other things, to (i) receive and apply payments of the Postpetition Indebtedness and
collections on and proceeds of the Postpetition Collateral to the Postpetition Indebtedness in the
manner specified in this Order and the Postpetition Loan Documents, (ii) file or record any
financing statements, mortgages or other instruments or other documents to evidence the security
interests in and liens upon the Postpetition Collateral or reflect any change of agency under the
Prepetition Loan Documents, (iii) as adequate protection or to the extent permitted by
section 506(b) of the Bankruptcy Code, charge and collect any interest, fees, costs, and expenses
and other amounts accruing at any time under the Prepetition Loan Documents, or this Order as
provided therein or herein, (iv) to give any Debtor any notice provided for in any of the

32

Postpetition Loan Documents, or this Order, including without limitation the notice described in this paragraph 18, and (v) upon the occurrence of an Event of Default (as defined in section 8.1 of the Postpetition Credit Agreement), charge the Default Rate on the Postpetition Indebtedness.

b.    Upon the occurrence and during the continuation of an Event of Default, and after providing thirty (30) days' prior written notice of their intention to terminate the Postpetition Financing and the authority to use Cash Collateral to the Debtors, the Creditors' Committee, and the U.S. Trustee, and subject to the last sentence of this paragraph 18(b) and paragraph 25 of this Order, the Postpetition Agent, Postpetition Lenders, Prepetition Agent and Prepetition Senior Lenders shall be entitled to: (1) terminate the Postpetition Financing under this Order and the Postpetition Loan Documents (it being understood that the obligations of the Prepetition Agent and the Prepetition Senior Lenders to make loans or otherwise provide extensions of credit have already ceased and terminated), (2) declare all Postpetition Indebtedness immediately due and payable, and require that all contingent Obligations, if any, be cash collateralized or terminated without liability to Postpetition Agent, Postpetition Lenders, Prepetition Agent or Prepetition Senior Lenders, and (3) revoke the Debtors' right, if any, under this Order and/or the other Postpetition Loan Documents to use Cash Collateral. During such thirty (30) day period, the parties shall use their best efforts to schedule and attend an expedited Court hearing with respect to Court approval of the exercise of the remedies described in this paragraph 18(b). The parties further acknowledge and agree that the only issue to be determined and decided at such Court hearing is whether an Event of Default has occurred and is continuing under the Postpetition Loan Documents. If the Prepetition Agent gives such thirty (30) days notice, then the Debtors may, subject to paragraph 25 of this Order, (x) continue to use Cash Collateral during such 30 day period in accordance with the Debtors' 2005 monthly Budget (the

114303.1 New World Pasta - Amended/Final DIP Order

"2005 Budget"), a copy of which was attached to that certain Order, (I) Pursuant To Bankruptcy Rule 9019, Approving Settlement Of Disputes Arising Out Of Debtors' Emergency Motion For Replacement DIP Facility And Use Of Cash Collateral, (II) Pursuant To Sections 363(B) And 364 Of The Bankruptcy Code And Bankruptcy Rule 4001, Approving Fourth Amendment To The DIP Credit Agreement, And (III) Amending Certain Provisions Of The July 9, 2004 Final Order Approving Postpetition Financing, even though such notice has been given, and (y) seek to gain the nonconsensual use of Cash Collateral and imposition of priming liens so long as the Debtors are otherwise able to provide to the Prepetition Senior Lenders adequate protection for the use of Cash Collateral and imposition of priming liens as required by the applicable provisions of the Bankruptcy Code.

c.       Upon the occurrence of an Event of Default, and after Court approval upon notice and hearing, the Postpetition Agent, Postpetition Lenders, Prepetition Agent and Prepetition Senior Lenders shall be entitled to foreclose or otherwise enforce their liens on any or all of the Postpetition Collateral and/or to exercise any other default-related remedies under the Postpetition Loan Documents, the Interim Order, this Order or applicable law. The parties shall use their best efforts to schedule and attend an expedited Court hearing within thirty (30) days of notice of the Event of Default given to the Debtors, the Creditors' Committee, and the U.S. Trustee. The parties further acknowledge and agree that the only issue to be determined and decided at such Court hearing is whether an Event of Default has occurred and is continuing under the Postpetition Loan Documents.

d.       Notwithstanding anything in paragraph 18(c) to the contrary, unless the Postpetition Agent otherwise agrees in writing, so long as there are any borrowings or letters of credit outstanding, or the Postpetition Agent or Postpetition Lenders have any

34

Postpetition Indebtedness outstanding under the Postpetition Loan Documents, the Prepetition Agent, Prepetition Senior Lenders, Prepetition Junior Lenders and JLL are directed to take no action to foreclose upon the liens granted to the Prepetition Agent, Prepetition Senior Lenders, Prepetition Junior Lenders or JLL pursuant to the Prepetition Credit Agreement, Postpetition Credit Agreement, the Interim Order, this Order or Prepetition Junior Lender Order, if applicable, or otherwise exercise any remedies against the Debtors or with respect to the Cash Collateral, Prepetition Collateral or Postpetition Collateral, in each case to the extent not authorized by further order of the Court.

19.    Carve-Out. Notwithstanding anything to the contrary contained in this Order but subject to paragraph 40 of this Order, the Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Obligations, Adequate Protection Senior Liens and Adequate Protection Senior Claims shall be subject to: (a) unpaid fees of the United States Trustee pursuant to Section 1930 of Title 28 of the United States Code and to the Clerk of the Bankruptcy Court, and (b) following notice to affected professionals and the occurrence of either (i) an Event of Default or (ii) an event that would constitute an Event of Default with the giving of notice or the lapse of time or both (the "Carve-Out Date"), the payment of claims of professionals of the Debtors, the Creditors' Committee and of any other statutory committee(s) appointed in the Chapter 11 Cases whose retention is approved by the Court during the Chapter 11 Cases pursuant to Section 327 and 1103 of the Bankruptcy Code (the "Retained Professionals") for fees and expenses accrued or incurred after the Carve-Out Date in an aggregate amount not to exceed $1,000,000, in addition to such Retained Professionals' fees and expenses accrued or incurred before the Carve-Out Date and previously allowed or, if not yet allowed, permitted by the Budget as and when allowed, whether or not paid; provided that all

such fees and expenses of Retained Professionals described in this paragraph 19 shall be ultimately allowed by final order of the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code; provided further that such Retained Professionals file their fee applications with the Court within 20 days of the time such professionals are first permitted to file an application for such fees and disbursements; provided further that all such fees and expenses of Retained Professionals described in this paragraph 19 are not incurred with respect to or in connection with the actions described in paragraph 24 of this Order (such amounts under clauses (a) and (b) of this paragraph being the "Carve-Out"). Agents' and Lenders' obligation to fund or otherwise pay the Carve-Out shall be added to and made a part of the Debtors' obligations to such applicable party, secured by the Postpetition Collateral, and Agents and Lenders, as applicable, shall be entitled to all of the rights, claims, liens, priorities and protections under the Interim Order, this Order, the Postpetition Credit Agreement, the Bankruptcy Code, and/or applicable law in connection therewith. Payment of any obligations relating to the Carve-Out, whether by or on behalf of Agents and Lenders, shall not and shall not be deemed to reduce the Debtors' obligations and shall not and shall not be deemed to subordinate any of Agents' and Lenders' liens and security interests in the Postpetition Collateral or its claims to any junior pre-petition or post-petition lien, interest, or claim in favor of any other party. Except as otherwise provided herein with respect to the Carve-Out, Agents and Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals incurred in connection with the Debtors' cases under any chapter of the Bankruptcy Code, and nothing in this Order or otherwise shall be construed to obligate Agents and Lenders in any way, to pay compensation to or to reimburse expenses of any Retained Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

114303.1 New World Pasta - Amended/Final DIP Order

20. Cash Collection Procedures. From and after the date of the entry of this Order, all collections and proceeds of any Postpetition Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor shall become entitled at any time, shall be deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Credit Agreement (or in such other accounts as are designated by Postpetition Agent from time to time), and such collections and proceeds upon such deposit shall become the sole and exclusive collateral of Prepetition Agent and Postpetition Agent and shall be applied against the Postpetition Indebtedness as provided in the Postpetition Credit Agreement and this Order. All cash and cash equivalents of any Debtor currently in any account of any Debtor or otherwise in the possession, custody or control of any Debtor constitutes proceeds of the Prepetition Collateral, which the Debtors are authorized to use in accordance with this Order and the Postpetition Credit Agreement.

21. Non-Ordinary Course Dispositions. Except as otherwise permitted by the Postpetition Credit Agreement, no sale, lease or other disposition of Postpetition Collateral outside the ordinary course of business (including any auction or other similar sales) or inconsistent with past practice may be done without the Postpetition Agent's written consent, including the compromise, adjustment or modification of the amount of any of Debtors' accounts receivable (by way of discount, offset or otherwise), and no such consent shall be implied, from any other action, inaction or acquiescence by Postpetition Agent or Postpetition Lenders.

22. Books and Records. The Debtors shall permit Postpetition Agent and any authorized representatives designated by Postpetition Agent (including, without limitation, their auditors, appraisers and financial advisors) to visit and inspect any of the properties of any

114303.1 New World Pasta - Amended/Final DIP Order

Debtor, including the Debtors' respective financial and accounting records, and to make copies and take extracts therefrom, and to discuss any Debtor's affairs, finances and business with such Debtor's officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtors shall promptly provide to Postpetition Agent or its respective designated representatives any information or data reasonably requested to monitor the Debtors' compliance with the provisions of the Postpetition Loan Documents and this Order and to perform appraisals or other valuation analyses of any property of any Debtor.

23. No Waiver of Rights by Agents and Lenders. None of the Agents or Lenders waives, and each expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has pursuant to any or all of the Prepetition Loan Documents, Postpetition Loan Documents, the Bankruptcy Code and/or other applicable law against any Debtor, any officer, director, employee, agent or other representative of any Debtor, and any other third party. In addition, the rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of the Agents and Lenders arising under the Interim Order or this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors under the Prepetition Loan Documents or Postpetition Loan Documents. Without limiting the generality of the foregoing, the Agents and Lenders may, as applicable, petition this Court for any such additional protection they may reasonably require with respect to the Prepetition Senior Indebtedness, the Postpetition Indebtedness, or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Collateral or the Cash Collateral, relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code, or

termination of the forbearance provided by the Prepetition Agent and Prepetition Senior Lenders in paragraph 27 of this Order. Except as set forth herein, entry of this Order shall not in any way constitute agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Order.

24. Restriction on Use of Lenders' Funds. Notwithstanding anything herein to the contrary, no Prepetition Collateral, Postpetition Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out, may be used by any of the Debtors, Creditors' Committee, or any other committee, person or entity to: (i) object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, amount, payment or enforceability of the Prepetition Senior Indebtedness, Postpetition Indebtedness, the Prepetition Senior Liens, the Postpetition Liens, the Super-Priority Claims, the Adequate Protection Senior Obligations, the Adequate Protection Senior Claims, or the Adequate Protection Senior Liens, (ii) except as otherwise provided by paragraph 18 of this Order regarding the use of Cash Collateral in accordance with the 2005 Budget, request to use the Cash Collateral without the prior written consent of Postpetition Agent, Postpetition Lenders, Prepetition Agent, or Prepetition Senior Lenders, (iii) except as otherwise provided by paragraph 25 of this Order regarding the imposition of priming liens, request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from Postpetition Agent and Postpetition Lenders without their prior written consent, and (iv) except as otherwise provided by paragraphs 18 and 25 of this Order regarding the use of Cash Collateral in accordance with the 2005 Budget, the imposition of priming liens and obtaining replacement financing, assert, join, commence, support or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims or any other claim, counter-claim, action,

39

proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, any of the Postpetition Agent, Postpetition Lenders, Prepetition Agent, or Prepetition Senior Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, including, without limitation, any actions under chapter 5 of the Bankruptcy Code or any so-called "lender liability" claims and causes of action (all actions described in this paragraph 24 are collectively, the "Claims and Defenses"); provided that the Creditors' Committee may use up to $50,000 of the Carve-Out to investigate the validity, perfection, priority, amount, payment or enforceability of the Prepetition Senior Indebtedness, Prepetition Senior Liens, Prepetition Junior Indebtedness, and/or Prepetition Junior Liens.

25. From and after the entry of this Order and so long as (i) the Postpetition Agent has not given notice of its intent to terminate or suspend lending under the Postpetition Credit Agreement, and (ii) the Prepetition Agent has not given notice of its intent to terminate the Debtors' authority to use the Cash Collateral (in each case whether on account of a default by the Debtors or otherwise), the Debtors waive and are hereby prohibited, absent the consent of the Postpetition Agent and the Prepetition Agent, from (a) granting liens to any third party, or (b) using Cash Collateral other than in accordance with the terms of this Order. The Postpetition Agent will afford the Debtors thirty (30) days advance written notice of its intent to terminate or suspend lending and during such thirty (30) day period will continue to lend to the Debtors pursuant to the 2005 Budget as though such notice had not been given. Notwithstanding any term to the contrary in the Postpetition Credit Agreement or this Order, if the Postpetition Agent gives the thirty (30) days' notice required hereby, then the Debtors may seek to gain the nonconsensual use of Cash Collateral and impose priming liens in connection with replacement

financing so long as (x) the Postpetition Indebtedness is paid in full in cash with the proceeds of such replacement financing, and (y) the Debtors are otherwise able to provide to the Prepetition Senior Lenders adequate protection for the use of such Cash Collateral and the imposition of priming liens in favor of the replacement lenders as required by applicable provisions of the Bankruptcy Code.

114303.1 New World Pasta - Amended/Final DIP Order

26. Release of Claims and Defenses Against Prepetition Senior Lenders.

(A)    Without limitation of the restrictions stated in paragraph 24 of this Order, (i) the Debtors shall have no right to assert, and hereby forever waive, relinquish and release, any and all Claims and Defenses, and (ii) the Creditors' Committee and any other committee, person or entity shall have the right to assert such Claims and Defenses against the Prepetition Agent or Prepetition Senior Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, only in an action commenced in this Court on or prior to August 22, 2004. If no such action is commenced on or prior to August 22, 2004 (or such timely commenced action does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of paragraph 26(b) of this Order), then all Claims and Defenses against the Prepetition Agent or Prepetition Senior Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, shall be, without further notice or order of the Court, deemed to have been forever relinquished, released and waived as to the Creditors' Committee and such other committee, person or entity, and if such an action is timely commenced on or before such date, all Claims and Defenses shall be deemed, immediately and without further action, to have been forever relinquished, released and waived as to the Creditors' Committee and such other committee, person or entity, except with respect to Claims and Defenses that are expressly asserted in such action. Nothing in this Order shall be deemed to grant standing to the Creditors' Committee or any other committee, person or entity to commence such an action.

(B)    If no such action is commenced on or prior to August 22, 2004, or such timely commenced action does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this paragraph, then (i) the Prepetition Senior

42

Indebtedness shall constitute allowed secured claims for all purposes in the Chapter 11 Cases and any Successor Case, without the requirement or need to file any proof of claim with respect thereto, (ii) the Prepetition Senior Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination or avoidance for all purposes in the Chapter 11 Cases and any Successor Case, (iii) the release of the Claims and Defenses shall be binding on the Creditors' Committee and any and all other committees, persons and entities in the Chapter 11 Cases and any Successor Case, and (iv) the Prepetition Senior Indebtedness, the Prepetition Senior Liens, releases of the Claims and Defenses, and payment of any portion of the Prepetition Senior Indebtedness shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by the Creditors' Committee or any and all other committees, persons and entities for any reason, including, without limitation, any successor to or estate representative of the Debtors, in the Chapter 11 Cases or Successor Case.

(C)     Notwithstanding anything in this Order to the contrary, the release, waiver and discharge of claims and actions described in Section 1.23 of the Postpetition Credit Agreement, including without limitation the Claims and Defenses with respect to the Postpetition Agent and Postpetition Lenders, is hereby approved in full on a final basis. The Postpetition Financing, Postpetition Indebtedness, Postpetition Liens, Super-Priority Claims, and any and all amounts described in paragraphs 4 and 5 of this Order shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by the Debtors, Creditors' Committee or any other committee, person or entity.

27.     Forbearance under Prepetition Credit Agreement Against Non-Debtors.  In exchange for receiving the adequate protection provided in this Order, the Prepetition Agent and Prepetition Senior Lenders agree to forbear from exercising any and all rights and remedies

114303.1 New World Pasta - Amended/Final DIP Order

under the Prepetition Credit Agreement against any non-debtor, subsidiary or affiliate of any Debtor; provided that such forbearance shall terminate upon the earliest of (i) an Event of Default, (ii) material breach of this Order, (iii) material adverse change in the business or operation of any such non-debtor, subsidiary or affiliate, or (iv) Court approval after notice and a hearing.

28.     Provisional Nature of Adequate Protection Payments.  Adequate protection payments made to the Prepetition Senior Lenders pursuant to the terms of this Order shall be provisional in nature pending ultimate allowance under Section 506(b) of the Bankruptcy Code.  Absent the consent of the Prepetition Agent, the Debtors will be obligated to continue making adequate protection payments hereunder until a plan of reorganization is confirmed.  If and to the extent that any adequate protection payment made to the Prepetition Senior Lenders is not allowed under Section 506(b) of the Bankruptcy Code, including those described in paragraphs 5 and 8 of this Order, such payment(s) will be recharacterized as a payment of principal on the Prepetition Senior Indebtedness.

29.     No Liability to Third Parties.  In making decisions to advance any Loans or other extensions of credit or letters of credit to any Debtor, in administering any Loans, letters of credit or other extensions of credit, permitting the use of Cash Collateral, or in taking any other actions reasonably related to the Interim Order, this Order or the Postpetition Loan Documents (including, without limitation, the exercise of their approval rights with respect to any Budget), Agents and Lenders (i) shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United

114303.1 New World Pasta - Amended/Final DIP Order

States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to Debtors, their creditors or their estates. Agents' and Lenders' relationship with any Debtor shall not constitute or be deemed to constitute a joint venture or partnership with any Debtor.

30. No Marshaling. Prepetition Agent, Prepetition Senior Lenders, Postpetition Agent and Postpetition Lenders shall not be subject to the doctrine of "marshaling" and shall not be under any obligation to marshal any assets in favor of the Debtor or any other party or against or in payment of any or all of the Prepetition Senior Indebtedness or Postpetition Indebtedness.

31. No Subrogation. In no event shall any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any of the Postpetition Indebtedness or any of the Prepetition Senior Indebtedness be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, Postpetition Agent, Postpetition Lender, Prepetition Agent or Prepetition Senior Lenders by the terms of the Postpetition Credit Agreement, the Prepetition Credit Agreement, the Interim Order, or this Order, until such time as all of the Postpetition Indebtedness and the Prepetition Senior Indebtedness is indefeasibly paid in full in cash.

32. No Requirement to Accept Title to Collateral. Postpetition Agent and Postpetition Lenders shall not be obligated to accept title to any portion of the Postpetition Collateral in payment of any of the Postpetition Indebtedness, in lieu of payment in cash or cash equivalents, nor shall Postpetition Agent and Postpetition Lenders be obligated to accept

45

payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than Postpetition Agent and Postpetition Lenders.

33. Successors and Assigns. The provisions of this Order, Postpetition Credit Agreement and other Postpetition Loan Documents shall be binding upon and inure to the benefit of the Agents (as applicable), each of the Prepetition Senior Lenders and Prepetition Junior Lenders (as applicable), JLL, and the Debtors and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors. Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the Postpetition Loan Documents.

34. Sections 363(m) and 364(e); Effect of Modification or Appeal. Based on the findings set forth in the Interim Order and this Order, in consideration for the Postpetition Financing, and the use of the Cash Collateral and Prepetition Collateral, the Agents and Lenders are entitled to, and hereby are granted, the full rights, privileges and protections of sections 363(m) and 364(e) of the Bankruptcy Code with respect to the Postpetition Credit Agreement, Amendment, Postpetition Indebtedness, Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Obligations, Adequate Protection Senior Liens and Adequate Protection Senior Claims created or authorized by the Interim Order or this Order in the event that this Order or any authorization contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal. Any subsequent stay, modification, reversal, amendment or vacation of this Order shall not affect the validity, priority, perfection and enforceability of any obligation of the Debtors to the Agents and Lenders incurred pursuant to the Interim Order or this Order. Notwithstanding any such stay, modification, reversal, amendment or vacation, all obligations

114303.1 New World Pasta - Amended/Final DIP Order

and other financial accommodations made pursuant to the Interim Order or this Order, all Postpetition Indebtedness, uses of Cash Collateral and other Prepetition Collateral by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions hereof and the Agents and Lenders shall be entitled to all the rights, privileges, remedies and benefits granted herein, including without limitation, the Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Obligations, Adequate Protection Senior Liens and Adequate Protection Senior Claims.

35. <u>Waiver of Discharge; Effect of Conversion or Dismissal</u>. The obligations of the Debtors hereunder in respect of the Postpetition Indebtedness and Adequate Protection Senior Obligations, unless otherwise indefeasibly paid in full in cash to the Agents or as otherwise agreed upon by the Agents, shall not be discharged or effected or modified in any manner or method by the entry of an order (a) confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having hereby waived such discharge or (b) converting or dismissing any or all of the Chapter 11 Cases. If one or more of the Chapter 11 Cases is dismissed, converted, otherwise superseded or substantively consolidated, the Agents and Lenders' rights and remedies under the Interim Order and this Order shall be and remain in full force and effect as if such case(s) had not been dismissed, converted or otherwise superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, supercission or consolidation, all of the terms and conditions of the Interim Order and this Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

36. <u>Survival</u>. Any liens, claims and other adequate protection granted to the Agents and the Lenders herein shall survive the Termination Date and shall continue until the

47

114303.1 New World Pasta - Amended/Final DIP Order

indefeasible payment in full in cash of the Prepetition Senior Indebtedness and Postpetition Indebtedness.

37. **Foreign Subsidiary**. Notwithstanding anything herein to the contrary, with respect to the capital stock or other equity interests of any subsidiary of any Debtor that is a "controlled foreign corporation" within the meaning of Section 957 of the Internal Revenue Code of 1986 (each a "Foreign Subsidiary"), the Postpetition Collateral shall also include shares or other equity interests representing 100% of the voting power of all classes of the capital stock or other equity interests of each Foreign Subsidiary that are entitled to vote within the meaning of US Treasury Regulation 1.956-2.

38. **Prepetition Participation Agreement**. Notwithstanding anything in this Order to the contrary, the Prepetition Participation Agreements are in full force and effect and nothing herein shall alter, modify, amend or effect the terms and conditions of the Prepetition Participation Agreements, and nothing herein is or shall be deemed a waiver of any rights or remedies of the Prepetition Agent or Prepetition Senior Lenders thereunder. Nothing in this Order shall be deemed to alter, amend, prejudice or waive the rights of the Prepetition Senior Lenders or the Prepetition Junior Lenders with respect to the Subordinate Obligations under the Prepetition Credit Agreement and the Prepetition Participation Agreements, provided, however, that in the event a court of appropriate jurisdiction finds that the Prepetition Junior Lenders' and/or JLL's agreements and waivers contained in the Prepetition Credit Agreement and/or the Prepetition Participation Agreements are enforceable, the Prepetition Agent preserves its rights to enforce such agreements and waivers retroactively to the Petition Date, including revoking any protections previously granted to the Prepetition Junior Lenders and/or JLL (including, without limitation, those protections contained in that certain Stipulation and Agreed Interim

Order entered by this Court on May 10, 2004, and any final order entered with respect thereto), which protections upon such revocation shall be deemed void ab initio and of no force and effect.

39.     No Adequate Protection to Prepetition Junior Lenders. Notwithstanding anything in this Order to the contrary, no adequate protection is being, or shall be deemed to be, provided to or for the benefit of the Prepetition Junior Lenders and/or JLL under the Interim Order or this Order.

40.     Professional Fees and Expenses. Notwithstanding anything in this Order to the contrary, the Prepetition Agent and Prepetition Senior Lenders reserve their rights to seek and require disgorgement of the fees and expenses paid to professionals retained under section 327, 328 and/or 1103 of the Bankruptcy Code or otherwise in these Chapter 11 Cases or Successor Case (other than the $1,000,000 Carve-Out) to the extent the adequate protection provided herein to the Prepetition Agent and Prepetition Senior Lenders is determined by the Court to be inadequate to protect such parties' interests in the Cash Collateral and Prepetition Collateral existing as of the Petition Date, including without limitation any diminution caused by the imposition of the Postpetition Agent's or Postpetition Lenders' priming liens. Any term or provision of this Order describing, granting or addressing the priority, funding and/or payment of the Carve-Out shall be subject to the terms and conditions of this paragraph 40.

41.     Notwithstanding anything in the Interim Order, this Order or Postpetition Credit Agreement to the contrary, it shall not be an Event of Default if the Creditors' Committee prevails on a motion, pleading, complaint or action against the Prepetition Junior Lenders and/or JLL or otherwise prevails on an objection to the Prepetition Junior Lenders' and/or JLL's claims

49

and/or Liens or prevails on any similar pleading which seeks to affect the Prepetition Junior Lenders' and/or JLL's claims or Liens or the collateral of the Prepetition Junior Lenders and/or JLL.

42. <u>Objections Overruled or Withdrawn</u>. All objections to the entry of this Order have been withdrawn or overruled.

114303.1 New World Pasta - Amended/Final DIP Order

43. <u>Order Controls If Conflict Exists</u>. To the extent any provisions in this Order conflict with any provisions of the Postpetition Credit Agreement, the provisions of this Order shall control to the extent of such conflict; <u>provided</u> <u>however</u> with respect to Section 1.23 of the Postpetition Credit Agreement which shall control to the extent of any conflict with this Order or the Interim Order. To the extent any provisions in this Order conflict with any provisions of the Interim Order, the provisions of this Order shall control to the extent of such conflict.

44. <u>Order Effective Immediately</u>. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

BY THE COURT:

_____
Bankruptcy Judge

Date: June 3, 2005

## EXHIBIT A

Postpetition Credit Agreement

# **EXHIBIT B**

Amendment No. 1 to Postpetition Credit Agreement

114303.1 New World Pasta - Amended/Final DIP Order