THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| NEW WORLD PASTA COMPANY, | * | CHAPTER 11 |
| PASTA ACQUISITION CORP | * | |
| THE PRINCE COMPANY, INC. | * | |
| RONZONI FOODS INTERNATIONAL | * | CASE NO. 1-04-bk-02817 MDF |
| CORPORATION, AND | * | |
| NWP DELAWARE, LLC. | * | Jointly Administered |
| | * | |
| Debtors-in-Possession | * | |

## OPINION

Before the Court is a Motion filed by Freight Management, Inc. ("FMI") for reconsideration of the Order entered December 1, 2005, sustaining the objection of New World Pasta Company ("NWP") to its proof of claim. FMI contends that the objection should be heard on the merits, notwithstanding FMI's failure to respond both to NWP's objection to its claim and to the subsequent notice by NWP of its intent to enter default judgment.

### Procedural and Factual History

NWP and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on May 10, 2004. On September 29, 2004, FMI filed an unsecured, non-priority claim in the amount of $2,473,821.00. NWP filed an objection to the claim on September 13, 2005, and served the objection on FMI. Accompanying the objection was a notice informing FMI that if a response to the objection was not filed by October 14, 2005, NWP would file a motion for entry of default judgment. When FMI failed to respond, NWP requested the

Court to enter judgment by default, which was granted on December 1, 2005.[1]

On December 9, 2005, FMI submitted a letter to the Court in which it acknowledged that the relevant deadlines had been missed, but requested the Court to reconsider the Order and to permit FMI to defend the claim on the merits. The Court deemed the letter a motion for reconsideration under 11 U.S.C. 502(j) and Fed. R. Bankr. P. 3008 and set the matter for hearing on February 2, 2006. FMI, which is based in California, attributed its failure to respond to the objection to its claim and to the motion for default judgment to a misunderstanding or miscommunication between FMI and an attorney located in Philadelphia, who FMI believed it had retained to represent its interests. FMI stated that it had forwarded documents to the attorney and was under the impression that he would respond to NWP's objection to its claim. FMI asserts that under the circumstances, it had a reasonable belief that it was being represented, although Philadelphia counsel disputes that he agreed to undertake such representation. FMI argues that this miscommunication constitutes "excusable neglect." NWP does not dispute that FMI believed that it had retained counsel who failed to file a timely response to the claim objection, but asserts that this good faith belief is insufficient to excuse FMI's failure to file a timely response. No testimony was presented by either party at the hearing. The matter is ready for decision.[2]

---

[1] FMI has not disputed that it received timely notice of NWP's objection or asserted that it was unaware of the response date of October 14, 2005, set forth in the notice. Further, FMI does not dispute that it was served with the default motion filed on October 18, 2005, and that it did not file a response prior to entry of the judgment.

[2] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(B). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is applicable to contested matters pursuant to Fed. R. Bankr. P. 9014.

Case 1:04-bk-02817-MDF    Doc 1838    Filed 04/11/06    Entered 04/12/06 14:27:54    Desc
Main Document      Page 2 of 13

## Discussion

FMI's letter seeking reconsideration of the order disallowing its claim will be treated by the Court as a motion to vacate a default judgment. The Third Circuit does not favor default judgments and any doubt as to whether a judgment by default should be vacated is resolved in favor of deciding the issue on the merits. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984). Section 502(j) provides that a claim that has been either allowed or disallowed by the court may be reconsidered for cause. Fed. R. Civ. P. 55(c), made applicable to bankruptcy cases under Fed. R. Bankr. P. 7055, permits a court to set aside the entry of a default for "good cause." If the court has entered a judgment by default, the court may set aside the judgment under Rule 60(b), which is made applicable to bankruptcy cases by Fed. R. Bank. P. 9024. When an entry of default and a default judgment have been entered, Rule 60(b) governs the disposition of the motion. *In re Massaro*, 235 B.R. 757, 761 (Bankr. D. N.J. 1999).

The parties agree that reconsideration of a claim disallowed because the claimant failed to respond to an objection to the claim is determined by whether the claimant is able to show "excusable neglect" under Rule 60(b), which authorizes a court to relieve a party from a final order or judgment for "mistake, inadvertence, surprise, or excusable neglect." The party pursuing relief has the burden to demonstrate by the preponderance of the evidence that its failure to act should be excused. *E.g., Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000); *In the Matter of Xpedior Inc*., 325 B.R. 392, 398 (Bankr. N.D. Ill. 2005) (citing *In re Kmart*, 381 F.3d 709 (7th Cir. 2004) (movant has burden to prove factors establishing excusable neglect)).

3

### a. Default judgment

The Third Circuit has determined that lower courts must consider three factors when deciding whether to vacate a default judgment: (1) whether the plaintiff will be prejudiced if the judgment is vacated; (2) whether the defendant has a meritorious defense to the underlying action; and (3) whether the default was the result of the defendant's culpable conduct. *$55,518.05 in U.S. Currency*, 728 F.2d at 195.[3] The second factor, whether the defendant has a meritorious defense, is the threshold question under this analysis. *Id.*; *see, also, In re USN Communications, Inc*. 288 B.R. 391, 395 (Bankr. D. Del. 2003) (defendant required to allege facts in support of defense to preference action to obtain relief from default judgment); *In re Massaro*, 235 B.R. at 763-64 (debtor required to provide evidence that he performed his fiduciary duties to obtain relief from default judgment on non-dischargeability of debt). To establish that it had a meritorious defense, FMI was required to allege specific facts that would constitute a defense. "Conclusionary language" does not suffice. *In re USN*, 288 B.R. at 395.

A proof of claim filed in accordance with the Rules of Bankruptcy Procedure is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). "If a party in interest files an objection to a proof of claim pursuant to 11 U.S.C. § 502(a), the burden of establishing the validity of the proof of claim is placed on different parties at different times." *United States of America v. Baskin & Sears, P.C.*, 207 B.R. 84, 86 (E.D. Pa.1997). Once an objection has been filed that introduces evidence sufficient to rebut the presumption of validity, the burden of proof shifts to the party that would bear the burden outside of bankruptcy. 9

---

[3]The first and third factors cited in *$55,518.05 in U.S. Currency* are similar to the excusable neglect elements articulated in *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 113 S.Ct. 1489 (1993), which are analyzed below.

4

*Collier on Bankruptcy*, ¶ 3001.09 (15th ed. 2005). As to contract claims as asserted by FMI, the claimant must prove the claim by a preponderance of the evidence. *In re Galloway*, 220 B.R. 236, 244 (Bankr. E.D. Pa. 1998). "As in non-bankruptcy law, bankruptcy claimants seeking damages must prove their entitlement." *Baskin*, 207 B.R. at 86.

In its objection to FMI's claim, NWP attached the agreement that formed the basis of FMI's claim, a Letter of Intent. The Letter of Intent also was attached as an exhibit to FMI's proof of claim. By its terms, the Letter of Intent stated that FMI's services would be provided at no cost to NWP, except for the reimbursement of travel costs. The Letter of Intent further provided that if NWP were satisfied with FMI's services, a final agreement would be negotiated. The only documents filed by FMI in support of its motion for reconsideration were two letters that explained the miscommunication that had occurred between FMI and the attorney that it believed it had retained to defend the claim objection. No evidence or argument was presented regarding the merits of the claim. Therefore, based upon FMI's failure to allege a meritorious defense to NWP's objection, I must deny the motion for reconsideration.

  b.  *Excusable neglect*

Although FMI's failure to plead an adequate defense to the objection fails to establish a meritorious defense and, thus, bars vacation of the judgment, the Court will also analyze the remaining factors, which address the issue of excusable neglect. The Court must apply the criteria set forth by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 113 S.Ct. 1489 (1993), to determine whether FMI's failure to

5

respond, based upon its erroneous belief that it had retained an attorney to represent its interests, constitutes excusable neglect .[4]

In *Pioneer*, the Supreme Court held that occurrences constituting "excusable neglect" need not arise from circumstances beyond the creditor's control. *Pioneer,* 507 U.S. at 388. The use of the term "neglect" implies that acts of carelessness may be forgiven, but the qualification imposed by the adjective "excusable" suggests that some careless acts cannot be overlooked. *Id.* at 395. The Supreme Court observed that "bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interest of the affected parties . . . ." *Id.* To assist in the exercise of these powers, the Supreme Court enumerated the following four factors that bankruptcy courts should consider when evaluating whether neglect is excusable:

(1) "the danger of prejudice to the debtor;"

(2) "the length of the delay and its potential impact on judicial proceedings;"

(3) "the reason for the delay, including whether it was with in the reasonable control of the movant;" and

(4) "whether the movant acted in good faith."

*Id.* at 395. Each of the *Pioneer* factors must be weighed, but "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* All factors must be considered in light of the totality of the circumstances. *In re American Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005); *In re XO Communications, Inc.*, 301

---

[4]Although the Supreme Court in *Pioneer* addressed the issue of "excusable neglect" in the context of the filing of a proof of claim under Fed. R. Bankr. P. 9006, the guidance of the case has been applied in a variety of contexts, including Rule 60(b). *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 126, n. 7 (3d Cir. 1999)

6

B.R. 782, 796 (Bankr. S.D.N.Y. 2003) ("[N]ot all factors must weigh in favor of the moving party. . . . Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other"). I will apply each of the *Pioneer* factors to determine whether FMI's failure to respond to the objection to its claim and to the notice that NWP intended to take a default judgment was due to excusable neglect.

        1.      <u>Prejudice to the debtor</u>

FMI has the burden of proving that NWP will not be prejudiced if the objection to its claim is heard on the merits. *Pioneer* does not describe situations that would constitute prejudice so it has been left to the lower courts to flesh out its meaning in the context of a bankruptcy case. In *In re O'Brien Environmental Energy, Inc.*, the Third Circuit commented favorably on the manner in which the bankruptcy court analyzed prejudice with respect to a reorganized debtor in the case of *In re Pettibone Corp.*, 162 B.R. 791 (Bankr. N.D. Ill. 1994). *In re O'Brien,* 188 F.3d at 127. In *Pettibone,* the debtor asserted that it would be prejudiced if a late claim were allowed because allowance of the claim would create higher insurance premiums and consume employee time. The bankruptcy court held that these increased costs were ancillary matters and did not constitute prejudice. Only situations related to the debtor's ability to defend against a late claim would constitute prejudice in an excusable neglect analysis. *In re O'Brien*, 188 F.3d at 127 (citing *In re Pettibone*, 162 B.R. at 805). The Third Circuit also examined considerations of prejudice in other contexts and defined prejudice as the "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Id.* (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656-57 (3d Cir. 1982)). "[P]rejudice is not merely the loss

7

of an advantageous position, but must be something more closely tied to the merits of the issue." *Id*.

When considering excusable neglect in the context of claims issues, several factors have been considered including: (1) whether the debtor was aware of the claim; (2) whether payment of the claim would force the return of payments previously made or affect distributions under the plan; (3) whether payment of the claim would adversely affect the debtor or the success of the reorganization; and (4) whether allowance of the claim would "open the floodgates to future claims." *Id*. at 127-28; *In re Inacom Corp*., 2004 WL 2283599, *4 (D. Del. 2004); *In re Cable & Wireless USA*, *Inc.*, 2006 WL 581040, *3 (Bankr. D. Del. 2006). A bankruptcy court also may consider whether the plan included funds to pay the disputed claim, but may not rely solely on this factor when analyzing whether there is prejudice to the debtor. *In re Inacom Corp*., 2004 WL 2283599, at *5, n. 3.

NWP states that the estate and its creditors will be unduly prejudiced if the motion for consideration is granted. The Chapter 11 plan has been confirmed, and NWP made an initial distribution to unsecured, non-priority claims immediately after the December 7, 2005, effective date. All outstanding objections to claims have been resolved except the claim of FMI. In its objection, NWP has requested disallowance of the entire claim. If the default order is opened and FMI is permitted to litigate its claim, final distribution of stock to unsecured creditors will be delayed. NWP also will incur additional administrative costs due to the prolongation of the case.

FMI cites other factors for consideration. NWP has been aware of FMI's claim since the filing of the case. Although an initial distribution has been made to unsecured, non-priority claimants under the terms of the confirmed plan, NWP has not asserted that it would be required

8

to seek the return of prior distributions if FMI's claim were allowed. The shares of stock have not been distributed, and the delay required to litigate the claim, while not insignificant, will not impair NWP's successful reorganization. The Court observes that NWP's confirmed plan anticipates that distributions to unsecured creditors will be made either on the effective date of the plan or when the claim is allowed.[5] Since all other claims have been resolved, it is unlikely that vacating the default order will "open the floodgates" as to other claims. Finally, NWP has not alleged that litigation of the claim will impair the success of the reorganization. *In re Lynch*, 2004 WL 2977562, *4 (Bankr. E.D. Pa 2004) ("[T]he Third Circuit Court of Appeals has made clear that the additional costs and delays associated with vacating a judgment 'rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment.'" (quoting *In re O'Brien*, 188 F.3d at 127) (internal citations omitted)).

      The dispute regarding FMI's claim is markedly different than the situation addressed by the Third Circuit in *O'Brien*. In finding that O'Brien Environmental Energy, Inc. would not be prejudiced legally by having to pay the movant's claim, the Third Circuit observed that the debtor would not be prejudiced because it had planned to pay the claim under the terms of the plan. The Court noted that the only prejudice that would result to the debtor was the loss of a windfall. The factual posture of the debtor in *O'Brien* contrasts starkly with the NWP's position in the current case. NWP listed FMI's claim as disputed in its schedules. The objection, which

---

[5]NWP's confirmed plan provides that general unsecured claims (Class 5) will "receive on the later of the Effective Date and date on which its Class 5 Claim becomes an Allowed Claim, pursuant to the Restructuring Transactions, its Pro Rata Share of (i) 1,125,000 shares of Holdings Common Stock, which shall constitute 15% of the Holdings Common Stock issued and issuable on or immediately after the Effective Date subject to dilution for the shares to be issued pursuant to the Management Incentive Plan, the New Warrants, and any issuance of equity or equity linked distributions in connection with the Exit Facility and (ii) the New Warrants."

9

challenged FMI's entitlement to any amount, could not have been more clear and complete. Although this Court believes that the analysis of prejudice in *O'Brien* was colored by the Third Circuit's impression that the debtor was attempting to take advantage of the situation, I am bound by the decision and must apply its reasoning to the facts of the present case. Therefore, while I cannot say that NWP will suffer no prejudice, I find that this factor weighs in favor of FMI.

      2.      <u>Length of the delay</u>

"No formula exists to calculate precisely when a delay is simply too long to be considered 'excusable' within the excusable neglect analysis." *In re National Steel Corp.*, 316 B.R. 510, 518 (Bankr. N.D. Ill. 2004). The Third Circuit has opined that " [a]lthough it is proper to consider the delay's effect on the judicial proceedings, *Pioneer* teaches that we should consider the length of the delay in absolute terms." *In re O'Brien*, 188 F.3d at 130. In *O'Brien*, the Third Circuit determined that the bankruptcy court relied too heavily on the impact that allowance of the claim would have on the debtor's time frame, rather than considering the actual length of the delay, which was only two months.

In the instant case, FMI filed a *pro se* letter, rather than a formal motion, requesting the Court to reconsider disallowance of its claim. The letter was filed nine days after the Court entered an order sustaining NWP's objection to the claim, twenty-two days after the response to the motion for default judgment was due, and less than two months after the deadline for responding to the objection. Default judgment had not been entered when NWP's Third Amended Plan was filed, which leads me to conclude that formulation of the plan was not dependent upon the resolution of outstanding claims objections. Even after the Plan was

10

confirmed on November 21, 2005, NWP continued to file objections to claims.

When considering the length of the delay, the Court must also examine the actions of FMI once it discovered that its counsel had missed the response date for objecting to the claim. *See In re Mezvinsky*, 2001 WL 1403525 at *5 (Bankr. E.D. Pa. 2001)(excusable neglect not found absent evidence that attorney immediately corrected computer problem and filed notice of appeal); *In re Interstate Grocery Distributions System, Inc*., 267 B.R. 907, 913 (Bankr. D. N.J. 2001) (claimant waited eight months after learning of its attorney's negligence to seek relief from turnover order); *cf. In re Hall*, 259 B.R. 680, 682 (Bankr. N.D. Ind. 2001) (counsel took prompt action once missed filing deadline discovered); *but cf. In re Inacom Corp*., 2004 WL 2283599 (D. Del. 2004) (failing to respond does not weigh in favor of denying a claim). FMI does not dispute that it received timely notice that NWP intended to take default judgment. At this point, FMI was aware that the attorney it believed had been retained had missed a deadline. Prudence dictated that FMI either obtain other counsel or demand that counsel file a response and provide it with a copy on or before the November 18 deadline. Nevertheless, considering the weight *O'Brien* places on the absolute lapse of time between the deadline for taking some action and filing of a Rule 60(b) motion, I do not find that the length of the delay to be excessive.

        3.      <u>Reasons for the delay</u>

The third *Pioneer* factor that must be considered by the Court is the reason for the delay, including whether the delay was within the reasonable control of the claimant. The Supreme Court in *Pioneer* and the Third Circuit in *O'Brien* found that inadequate notice was provided to the affected party in each case. In *Pioneer* and *O'Brien* blame for the delay was assessed, at least in part, against the debtors. FMI does not dispute that it received a copy of the objection to

its claim, that it received notice of the deadline for filing a response and that it knew it was necessary to respond by the specified date to protect its rights. Further, FMI does not dispute that it received notice that NWP intended to take default judgment and that it knew the deadline by which a response was required to be filed or a default judgment would be entered.[6] The only explanation FMI advanced as to why it failed to file a timely response or request a hearing was its assertion that the claimant had retained counsel to represent its interests and to file an appropriate response to the objection, an assertion that Pennsylvania counsel disputes.

*Pioneer* expressly held that parties will be "held accountable for the acts and omissions of their chosen counsel." *Pioneer*, 507 U.S. at 396, 113 S. Ct. at 1499. Whether or not the Pennsylvania firm contacted by FMI was engaged is irrelevant to the issue before this Court. I must impute the negligence of FMI's counsel to FMI in any event. *See In re American Classic Voyages, Co.* 405 F.3d at 134. Under the circumstances, I find that the delay was entirely avoidable and completely due to the failure of FMI and its putative counsel to respond to an objection of which they were both fully aware. Therefore, I find that this factor strongly supports denial of a finding of excusable neglect.[7]

---

[6]Local Bankruptcy Rule 3009(d) provides that if a claimant does not file an amended claim, an answer, or request for a hearing within thirty days of the date of the notice, the objectant may move the court for default judgment without further notice to the claimant. Therefore, by sending FMI a notice of intent to enter default judgment, NWP provided FMI with more due process than was required under the local rules.

[7]At least three Circuits have held that the reason for the delay is the most significant factor in the *Pioneer* analysis. *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004); *Graphic Communications International Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 993, 996 (7th Cir. 1998). The Third Circuit has not held that the third *Pioneer* factor is entitled to greater weight than the other factors. In determining whether a claimant's failure to file a proof of claim prior to the bar date was excusable, however, in at least one case, the Court relied primarily on the "reason for the delay" factor. *American Classic Voyages*, 405 F.3d at 134.

Case 1:04-bk-02817-MDF    Doc 1838    Filed 04/11/06    Entered 04/12/06 14:27:54    Desc
Main Document      Page 12 of 13

4. Good faith

The final factor to be considered by the Court is the claimant's good faith. NWP has not questioned FMI's good faith, and the Court was presented with no evidence to suggest that the request for reconsideration was motivated by an improper purpose. Therefore, I find this factor is neutral when analyzing the totality of the circumstances.

After reviewing the *Pioneer* factors, I conclude that FMI has demonstrated excusable neglect primarily by establishing lack of prejudice to NWP. The "reason for the delay" factor weighs heavily in favor of NWP, but all other factors are either neutral or support a finding of excusable neglect as interpreted in this Circuit. Although I find that FMI's failure to respond to the claim objection is excusable, I will deny the motion because of FMI's failure to plead a meritorious defense.

**Conclusion**

For the foregoing reasons, FMI's motion to reconsider the Order entered December 1, 2005, sustaining NWP's objection to FMI's proof of claim is denied. An appropriate order will be entered.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: April 11, 2006

*This document is electronically signed and filed on the same date.*

13